UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Mattachine Society of Washington, D.C., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>United States Department of Justice, )<br>)<br>Defendant. )<br>) | Civil Case No. 1:16-cv-00773 |

## MEMORANDUM OPINION

Before the Court are defendant's Motion for Summary Judgment and plaintiff's Cross-Motion for Summary Judgment. Having considered the motions, responses, replies, exhibits, filings, and applicable law, the Court grants in-part and denies in-part the parties' motions.

I.  BACKGROUND

On January 25, 2013, the Mattachine Society of Washington, D.C. ("MSDC") submitted a Freedom of Information Act ("FOIA") request to the Federal Bureau of Investigation ("FBI") regarding the production of documents related to Executive Order 10450 ("EO 10450"). Compl. 4, ECF No. 1. EO 10450 was signed by President Eisenhower in 1953, and ostensibly gave the heads of federal agencies the ability to investigate and dismiss government employees if they posed a risk to national security. *Id.* at 1–3. MSDC claims that this stated purpose was merely pretextual, and that in reality EO 10450 allowed J. Edgar Hoover to purge the FBI of gay and lesbian employees whom he had previously identified via the "Sex Deviate Program." *Id.* at 1–2. The adoption of EO 10450 legalized the firing of government employees on the basis of sexual perversion. *Id.* at 3. In the following decades, the FBI and the United States Civil Service

1

Commission ("CSC") discharged thousands of employees from federal service for sexual perversion under EO 10450. *Id.* at 3.

The Government's response to MSDC's FOIA request for documents regarding this program or its overseer Warren E. Burger, then Civil Division Chief for the Department of Justice at the time of EO 10450's enactment, resulted in the production of 552 pages of documents and the withholding of 583 additional documents. *Id.* at 4. Because of the apparent paucity of documents produced in response to request for all documentation of a 40 year program, MSDC filed this suit requesting that this Court order the Department of Justice ("DOJ") and the FBI release all materials currently identified. MSDC also requests that the FBI conduct a new, more thorough search and review of their files to identify further responsive documents. *Id.* at 5.

The Government filed a Motion for Summary Judgment, ECF No. 37, arguing that they have conducted an adequate search and produced all responsive documents. Def.'s Mot. for Summ. J. 3. Plaintiff has filed a Cross-Motion for Summary Judgment, ECF No. 40, arguing that the DOJ improperly invoked statutory exemptions to withhold certain responsive documents. Pl.'s Cross-Mot. for Summ. J. 1–2. The Court, in response to the plaintiff's opposition of Government's Motion for Summary Judgment, granted *ex parte, in camera* review of unredacted versions of FBI 458–460, FBI 935–938, FBI 1151–1152, and FBI 1268–1269 in order to determine whether the Government's invocation of statutory exemptions to withhold or redact responsive documents was proper. Order 1, ECF No. 48.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV.

2

PRO. 56(a). Summary judgment is "appropriate only in circumstances where 'the evidence is such that a reasonable jury could not return a verdict for the nonmoving party.'" *Washington Post Co. v. Dept. of Health & Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). All evidence must be viewed "in the light most favorable to the nonmoving party," and if a genuine dispute exists, "parties should be given the opportunity to present direct evidence and cross-examine the evidence of their opponents in an adversarial setting." *Id.*

In FOIA cases, an agency defendant may be entitled to summary judgment if it can demonstrate that (1) no material facts are in dispute, (2) it has conducted an adequate search for responsive records, and (3) each responsive record that it has located has either been produced to the plaintiff, is unidentifiable, or is wholly exempt from disclosure. *Weisberg v. Dept. of Justice*, 705 F.2d 1344, 1350–1351 (D.C. Cir. 1983).

**B.    Adequacy of the Search**

An agency that has received a FOIA request must "conduct a search reasonably calculated to uncover all relevant documents." *Truitt v. Dept. of State*, 897 F.2d 540, 541 (D.C. Cir. 1990) (internal quotation marks omitted). The adequacy of a search does not depend upon whether it uncovers all documents that may conceivably exist, but upon the agency demonstrating that it made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information." *Oglesby v. Dept. of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Therefore, an agency need not demonstrate that it has conducted a perfect search or that it "search[ed] every record system." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

3

At the summary judgment stage, the agency must demonstrate that it complied with FOIA "by providing 'a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive material . . . were searched.'" *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313–314 (D.C. Cir. 1991). The plaintiff may then "provide countervailing evidence as to the adequacy of the agency's search." *Id.* at 314. If a review of the record created by these affidavits raises "substantial doubt" as to a search's adequacy, "particularly in view of 'well defined requests and positive indications of overlooked materials,'" summary judgment in the agency defendant's favor would not be appropriate. *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979)).

Affidavits provided in support of the adequacy of an agency's search "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard*, 926 F.2d at 1200. They may, however, be rebutted by evidence of bad faith. *Id.*

C. **Production and Exemptions**

This Court determines *de novo* whether an agency has properly withheld information under a claimed FOIA exemption. See *Mead Data Cent., Inc. v. Dept. of Air Force*, 566 F.2d 242, 251 (D.C.Cir.1977). "The underlying facts are viewed in the light most favorable to the [FOIA] requester," *Weisberg*, 705 F.2d at 1350, and the exemptions must be narrowly construed. *FBI v. Abramson*, 456 U.S. 615, 630 (1982). An agency claiming an exemption to FOIA bears the burden of establishing that the exemption applies. *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 352 (1979). And FOIA requires that "[a]ny reasonably segregable portion of a

4

record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C.A. § 552(b).

Especially in national security matters, however, courts generally defer to agency expertise. *See, e.g., Taylor v. Dept. of the Army*, 684 F.2d 99, 109 (D.C. Cir. 1982) (according "utmost deference" to classification affidavits); *Krikorian v. Dept. of State*, 984 F.2d 461, 464–65 (D.C. Cir. 1993) (acknowledging "unique insights" of executive agencies responsible for national defense and foreign relations). Because of that deference and the peculiarities of FOIA litigation, agencies regularly submit affidavits setting forth the bases for withholding otherwise responsive information, just as they do to establish the adequacy of their searches, in support of their motions for summary judgment. The agency's submissions "must show, with reasonable specificity, why the documents fall within the exemption." *Judicial Watch, Inc. v. Dept. of Health & Human Servs.*, 27 F. Supp. 2d 240, 242 (D.D.C. 1998). Again, they are presumed to be submitted in good faith. *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981). The D.C. Circuit has explained the importance of these submissions in evaluating FOIA exemption claims:

> As, ordinarily, the agency alone possesses knowledge of the precise content of documents withheld, the FOIA requester and the court both must rely upon its representations for an understanding of the material sought to be protected. . . . . Affidavits submitted by a governmental agency in justification for its exemption claims must therefore strive to correct, however, imperfectly, the asymmetrical distribution of knowledge that characterizes FOIA litigation. The detailed public index which in Vaughn we required of withholding agencies is intended to do just that: to permit adequate adversary testing of the agency's claimed right to an exemption, and enable the District Court to make a rational decision whether the withheld material must be produced without actually viewing the documents themselves, as well as to produce a record that will render the District Court's decision capable of meaningful review on appeal.

*King v. Dept. of Justice*, 830 F.2d 210, 218–19 (D.C. Cir. 1987) (quotations omitted).

To accomplish that goal, the agency must supply "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent. v. Dept. of the Air Force*, 566 F.2d 242, 251 (1977). The requisite specificity "imposes on the agency the burden of demonstrating applicability of the exemptions invoked *as to each document or segment withheld*." *King*, 830 F.2d at 224. Though the affidavits need not contain factual descriptions the public disclosure of which would endanger the agency defendant's mission, *Vaughn v. Rosen*, 484 F.2d 820, 826–27 (D.C. Cir. 1973), they must feature "the kind of detailed, scrupulous description [of the withheld documents] that enables a District Court judge to perform a *de novo* review." *Church of Scientology of Cal., Inc. v. Turner*, 662 F.2d 784, 786 (D.C. Cir. 1980).

### 1. *Exemption 3*

Exemption 3 protects matters that are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). With regards to national security interests that may be protected by statute, "it is the responsibility of the [agency], not that of the judiciary, to weigh the variety of subtle and complex factors in determining whether disclosure of information may lead to an unacceptable risk." *CIA v. Sims*, 471 U.S. 159, 185 (1985).

### 2. *Exemption 6*

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In examining whether exemption 6 is proper, the Court "must balance the interest of the general public in disclosure against the privacy rights of individuals." *Washington Post Co. v. Dept. of Health & Human Servs.*, 690 F.2d 252, 258 (D.C. Cir. 1982). To perform this balancing, the Court

engages in a two-step inquiry of (1) determining whether the information is contained within personnel, medical, or similar files, and (2) determining whether disclosure would constitute a clearly unwarranted invasion of personal privacy. *Id.* at 260.

Balancing aside, Exemption 6 protects any information which "applies to a particular individual." *Dept. of State v. Washington Post Co.*, 456 U.S. 595, 602 (1957). However, information about federal employees is generally afforded less protection. *See Arieff v. Dept. of the Navy*, 712 F.2d 1462, 1467–68 (D.C. Cir. 1983) (declining to protect information about a large group of individuals); *Aguirre v. SEC*, 551 F. Supp. 2d 33, 54 (D.D.C. 2008) ("Correspondence does not become personal solely because it identifies government employees.") Personal information typically protected by exemption 6 includes "place of birth, date of birth, date of marriage, employment history, and comparable data." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989).

This balancing must be made in light of the knowledge that the "dominant objective" of Congress is to provide full disclosure of agency records. *Dept. of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). "Under exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the Act." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002).

### 3. *Exemption 7(C)*

Exemption 7(C) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7). As in exemption 6, the Court must "balance the privacy interests that would be compromised by disclosure against the public interest in release of information." *Davis v. Dept.*

7

*of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992). However, under exemption 7(C) the only relevant public interest is "the citizens' right to be informed about 'what their government is up to.'" *Dept. of Justice v. Reports Comm. for Freedom of Press*, 489 U.S. 749 (1989) (quoting *EPA v. Mink*, 410 U.S. 73, 105 (1975) (Douglas, J., dissenting)).

### 4. *Exemption 7(D)*

Exemption 7(D) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7). For this exemption, "the question is not whether the requested *document* is of the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential. *Dept. of Justice v. Landano*, 508 U.S. 165, 172 (1993). In order to demonstrate this, the agency may "point to more narrowly defined circumstances that will support the inference [of confidentiality]." *Id.* at 179.

## III. ANALYSIS

As discussed above, an agency defendant in a FOIA cases may be entitled to summary judgment if it can demonstrate that (1) no material facts are in dispute, (2) it has conducted an adequate search for responsive records, and (3) each responsive record that it has located has either been produced to the plaintiff, is unidentifiable, or is wholly exempt from disclosure. *Weisberg*, 705 F.2d at 1350–1351.

Neither MSDC nor the Government alleges that there are material facts in dispute, and therefore the Court's analysis will focus on the second and third of the elements outlined in *Weisberg*.

8

### A. The FBI's Search was Not Adequate

The FBI's response fails to demonstrate that their search was reasonably calculated to uncover all relevant documents. The locations searched and search techniques employed by the FBI, as outlined in the Second Hardy Declaration, are sufficient, but the limited nature of the terms used, and the complete failure to search for documents related to Warren E. Burger, are wholly insufficient. Second Hardy Declaration 4–5, ECF No. 44-1.

The FBI searched for "Executive Order 10450," "Sex Deviate," and "Sex Deviate Program" during its initial searches. *Id.* at 3. However, the plaintiff's FOIA request asked the FBI to "provide copies of all communications, personnel or investigative files created in association with Executive Order 10450." Pls.' FOIA Request 1, ECF No. 1-18. It further requests "any and all internal FBI correspondence or communications regarding Executive Order 10450 and specifically includes, but is not limited to, all files created by and communications to or from Warren E. Burger." *Id.*

The defendant cites the initial FOIA request as the genesis of its search terms, but fails to establish through its affidavit that the language of "Sex Deviate" persisted in use beyond the implementation of EO 10450. As the plaintiff explains, that EO 10450 "authorized the FBI to expand its 'Sex Deviate program.'" *Id.* However, the language of EO 10450 uses the term "sexual perversion" rather than "Sex Deviate," and the FBI's affidavit does not address this shift in institutional language. Exec. Order No 10,450 Sec. 8(a)(1)(iii), 18 Fed. Reg. 2489 (Apr. 27, 1953). The plaintiff cited this language in their initial request, and the Court finds that it is a reasonable expectation that any sufficient search of material related to the discharge of federal employees under the regime created by EO 10450 include the relevant language of the order itself. While searching for "Sex Deviate" and "Sex Deviate program" may constitute an adequate search of

9

adverse actions against homosexual federal employees prior to the implementation and execution of EO 10450, the Court finds it inadequate in light of the shift in language reflected in the order itself.

The plaintiff, in their Cross-Motion for Summary Judgment, contends that a full search related to EO 10450 "would include related terms such as morals charges, immoral, homo, homosexual, gay, lesbian, queer, sodomy, deviant, and abomination." Pl.'s Cross-Mot. for Summ. J. 15 (internal quotations omitted). In response, the government contends that supplemental terms suggested by plaintiff would result in an overly burdensome number of responses. The FBI contends that terms like "gay," "lesbian," and "homosexual," are overly broad, yet MSDC explicitly outlined in their initial request that they are interested in the FBI's systematic collection of information, specifically on homosexual employees, in the wake of EO 10450. Second Hardy Declaration 4. While broad, these terms and the terms outlined in MSDC's Cross-Motion are directly related to MSDC's specific request; even if there is a large volume of responsive documents, MSDC's request would compel their production.

As evidence of the overly burdensome nature of these terms, the government points to the fact that "the search term 'pervert' alone returned over 5,500 Sentinel ECF hits," and that sifting through these hits to determine which are responsive and which are not would be unduly burdensome. *Id.* at 5–6. However, the FBI has not reviewed any portion of this search or others like it, offers no projections of what the results might be, and does not estimate the number of additional hours, resources, or funds make these searches rise to level of being an undue burden. The Government provides no context in which to assess the volume of responses as being disproportionately burdensome as compared to similar requests. The FBI is asking the Court to

declare that these searches would be unduly burdensome merely because the FBI suspects that they might be so, and that is not sufficient.

Finally, the FBI completely failed to search for any documents related to Warren E. Burger in its initial response to the request. MSDC raised this issue during this lawsuit, and the Government now says that it has searched all documents containing all permutations of Warren E. Burger's name. The Government states that there is not a single responsive document amongst the results. *Id.* at 6–7. Respectfully, this strains credulity. It is suspicious at best, and malicious at worst, for the FBI to assert in one paragraph that the review of 5,500 documents would be burdensome, and in the next claim to have conducted a review of every document related to any permutation of the name Warren E. Burger—Chief Justice of the United States from 1969 to 1986, D.C. Circuit Judge from 1956 to 1969, and Chief of the Civil Division of the Justice Department from 1953 to 1956. This absurd dichotomy stretches credulity further, as the FBI claims that the review of that search did not yield a single responsive document. The Court finds it nearly impossible to believe that a search for every permutation of the name of the man who was charged with carrying out EO 10450, a robust federal mandate that built upon an established FBI initiative, yielded zero responsive documents.

### B. FBI 458–460 are Properly Withheld Pursuant to Exemption 7(D)

The Court finds that the FBI properly withheld documents FBI 458–460 under Exemption 7(D). Through *in camera* review, the Court has confirmed that these documents constitute information provided by a foreign government entity under the assumption of confidentiality, and that to compel production of the documents may result in an unnecessary and entirely avoidable cooling between the relations of the FBI and the foreign government entity which provided this information.

### C. FBI 935–938 are Properly Redacted Pursuant to Exemptions 6 and 7(c)

The Court finds that the FBI properly withheld documents FBI 458–460 under Exemption 7(D). Through *in camera* review, the Court has confirmed that these documents contain personally identifying information that, if produced, would constitute a clear violation of the right of privacy for individuals identified and their families.

However, while the names in this document are properly redacted pursuant to Exemptions 6 and 7(c), the Court finds that public interest in the implementation and aftermath of EO 10450 is sufficient to warrant the production of an index for cross-referencing persons who are listed in these and other responsive documents produced as a result of MSDC's FOIA request.

Such names are to be replaced with alphanumeric markers, which are to be uniquely identifiable and consistent throughout all documents produced related to this FOIA request. The Court believes that this will sufficiently protect the privacy interests of all parties involved, while also allowing the public to better study the effects of EO 10450 on lesbian, gay, bisexual, and transgender federal employees who were surveilled, harassed, and/or terminated under this program and others like it.

For the Court to allow the redaction of personal information without the production of such an index would substantially inhibit the public's ability to know what its government is up to, and effectively prevent the public from understanding what the impact of this allegedly discriminatory and unconstitutional regime truly looked like. The Court believes that such a result is not in keeping with the purpose of the Freedom of Information Act, and would therefore be an unjust and unacceptable result.

### D. FBI 1151–1152 are Not Properly Redacted Pursuant to Exemptions 6 and 7(c)

The Court finds that the FBI has redacted portions of documents FBI 1151–1152 that are not protected by Exemptions 6 and 7(c). Specifically, the FBI must produce a version of FBI 1152 that does not redact information contained in the third paragraph sentence which, in the redacted version produced for *in camera* review, begins "Investigation showed that," other than names or dates. Additionally, the FBI must produce a version of FBI 1152 that does not redact information contained in the second line of the first full paragraph, or information contained in the fourth line of the final paragraph, other than names or dates. The Court finds that all other redactions in FBI 1151–1152 are permissible pursuant to Exemptions 6 and 7(c).

Finally, as outlined above, the names redacted in these documents are to be replaced with identifying alphanumeric markers which will be included in the index produced for cross-reference purposes.

### E. FBI 1268–1269 are Properly Redacted Pursuant to Exemption 3

The Court finds that the FBI properly redacted documents FBI 1268–1269 under Exemption 3. Through *in camera* review, the Court has confirmed that redacted portions of these documents constitute information protected by statute due to the presence of national security interests.

## V. CONCLUSION

Defendant's Motion for Summary Judgment will be denied insofar as the Court has found that the search was inadequate, and insofar as the Court has found that FBI 935–938 and FBI 1151–1152 were improperly redacted. Defendant's Motion for Summary Judgment will be granted insofar as the Court has found that the exemptions invoked to redact or withhold FBI 458–460 and FBI 1268–1269 were properly applied.

Plaintiff's Cross-Motion for Summary Judgment will be denied insofar as the Court finds that the FBI's withholdings in part or in full of FBI 458–460 and FBI 1268–1269 are proper. Plaintiff's Cross-Motion for Summary Judgment will be granted insofar as the Court finds the FBI's search to be inadequate, and that the withholdings in part or in full of FBI 935–938 and FBI 1151–1152 are not proper.

A separate order shall issue.

DATE: 7/28/17

Royce C. Lamberth
United States District Judge