**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|   |   |   |
|---|---|---|
| THE MATTACHINE SOCIETY OF WASHINGTON, DC | ) ) ) | |
| *Plaintiff,* | ) ) ) | |
| v. | ) ) | Case No. 1:16-cv-773-RCL |
| UNITED STATES DEPARTMENT OF JUSTICE | ) ) ) ) | |
| *Defendant.* | ) ) ) | |

## **MEMORANDUM OPINION**

In 2013, The Mattachine Society of Washington, DC ("Mattachine") submitted a Freedom of Information Act ("FOIA") request to the FBI for documents related to Executive Order 10450 ("EO 10450"). EO 10450 was signed by President Eisenhower and gave federal agencies the authority to investigate and terminate federal employees on the suspicion of homosexuality. In response to Mattachine's FOIA request, the FBI produced 861 pages and withheld 846 pages. In 2016, the FBI filed a Motion for Summary Judgment on the basis that it had conducted an adequate search and produced all responsive, non-privileged documents. ECF No. 37. Mattachine filed a cross-motion for summary judgment, arguing that the search was inadequate and that certain documents were improperly redacted. ECF No. 40. In 2017, this Court granted in part and denied in part the government's Motion for Summary Judgment, finding that the three search terms used were inadequate and that certain documents were improperly redacted. ECF No. 52. Mattachine now seeks to recover the attorneys' fees and costs incurred in litigating the summary judgment motion. ECF No. 60. The FBI opposes this motion, arguing that Mattachine did not fully prevail at the summary judgment stage and that the amount

1

sought is unreasonable. ECF No. 72. For the reasons set forth below, the Court will grant Plaintiff's Motion for Attorneys' Fees and Costs in the amount of $178,448.91.

## LEGAL STANDARD

Under FOIA, courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). A party seeking costs and fees must demonstrate both "eligibility" and "entitlement." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011). "Eligibility" means that the complainant has "substantially prevailed," which FOIA defines as having obtained relief through "a judicial order" or through "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). To assess "entitlement," courts look at four non-dispositive factors: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents. *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 820 F. Supp. 2d 39, 45 (D.D.C. 2011). Finally, a complainant who has demonstrated both eligibility and entitlement also has the burden to prove that the amount sought is reasonable based on supporting documentation "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004).

# ANALYSIS

As explained below, the Court finds that Mattachine is entitled to attorneys' fees and costs in the amount of $178,448.91.

## I. Mattachine has Demonstrated its Eligibility for Attorneys' Fees and Costs under FOIA.

Mattachine has shown that it is eligible for fees and costs because it "substantially prevailed" at the summary judgment stage. The Court ordered the FBI to revise its redactions and create an index for cross-referencing persons listed in responsive documents. It is true that after conducting an *in camera* review of the redacted documents, some of the FBI's redactions were found to be proper. The Court, however, did not need to find that every single redaction was improper in order for Mattachine to be entitled to fees, as FOIA's requirement is not that a complainant prevailed on 100% of the issues presented—FOIA requires only that a complainant "substantially prevailed." That is precisely what happened here.

The Court also ordered the FBI to conduct a more adequate search by adding new search terms. The inadequacy of the initial search was exemplified by the fact that not a single responsive document contained Warren E. Burger's name, and the Court took serious issue with the FBI's argument about additional search terms being unduly burdensome. The Court's Order noted that the government's arguments "strain[ed] credulity" and were "suspicious at best, and malicious at worst." ECF No. 51 at 11. In the face of such strong language, it is difficult to conclude that Mattachine did not "substantially prevail."

## II. Mattachine has Demonstrated its Entitlement to Attorneys' Fees and Costs under FOIA.

After weighing the four entitlement factors, it is clear that Mattachine is entitled to costs and fees. Although no one factor is dispositive, the Court finds that all four factors favor Mattachine.

### A. The Public Significantly Benefits from Mattachine's Success.

In determining whether there is a public benefit, the Court looks at whether the "complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (quoting *Blue v. Bureau of Prisons*, 570 F.2d 529, 534 (5th Cir. 1978)). That requirement is satisfied when a requester obtains new documents related to "an event of national importance." *Davy v. CIA*, 550 F.3d 1155, 1160 (D.C. Cir. 2008). This test, however, is not concerned with the public value of the information actually received; rather, the Court's focal point should be "the *potential* public value of the information sought." *Id.* at 1159 (emphasis added). A public benefit exists if the request has "at least a modest probability of generating useful new information about a matter of public concern." *Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir. 2016).

The FBI acknowledges that documents related to EO 10450 concern a matter of national importance. Our country's history of discrimination against LGBTQ individuals makes the disclosure of this information important. The public benefits from an increased understanding of how the government has treated these individuals. Even though only a modest amount of information was disclosed, this factor still turns in favor of Mattachine—it is the public value of the *request* that courts evaluate for significance, not the actual *results* of the search. Therefore, the first factor weighs heavily in favor of Mattachine's entitlement to costs.

### B. Mattachine's Interest in the Documents is Based on their Public Benefit, as Mattachine has no Commercial Interest in the Documents.[1]

In determining whether a complainant is entitled to costs and fees, it is important to determine that complainant's interest in the information disclosed. When complainants derive

---

[1] Because the second and third factors are closely related, it is easiest to discuss them together.

some commercial benefit from FOIA requests, courts are less likely to award costs and fees. The second and third factors are thus critical to the Court's analysis of entitlement. *See, e.g., Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 820 F. Supp. 2d at 45 (finding that the lack of commercial benefit to complainant weighed heavily in favor of awarding fees).

In this case, Mattachine receives no commercial gain from its FOIA request. On the contrary, its interest in the information is very much aligned with the public's interest in the information. Mattachine is attempting to help the public understand the government's treatment of LGBTQ individuals throughout our country's history. Mattachine is a non-profit 501(c)(3) corporation dedicated to educating people about topics like EO 10450. It receives no financial gain from this request. Although the FBI "neither adopts nor concedes the validity of the entirety of [p]laintiff's arguments with respect to entitlement," it is telling that the FBI does not mention either the second or third factor in its opposition. ECF No. 72 at 6. The Court finds that the second and third factors weigh heavily in favor of Mattachine's entitlement to costs and fees.

### C. The FBI's Withholding of the Requested Documents was Unreasonable.

The FBI's initial search prior to the Court's 2017 Order was unreasonable. It is true that many of the FBI's redactions were reasonable, and the FBI still had some arguably "reasonable basis in law" for redactions that turned out to be unwarranted. *Davy*, 550 F.3d at 1162. The FBI's insistence upon using only three search terms, however, was highly unreasonable and extremely suspicious. Before this Court forced the FBI to expand its search, it used only the terms "EO 10450," "Sex Deviate," and "Sex Deviate Program." These three terms were "inadequate in light of the shift of the language reflected in [EO 10450] itself." ECF No. 51 at 10. As explained above, this Court firmly rejected the government's argument that expanding the search terms would produce an unduly burdensome number of results. It was also "nearly impossible to

5

believe that a search for every permutation of the name of the man who was charged with carrying out EO 10450, a robust federal mandate that built upon an established FBI initiative, yielded zero responsive documents." *Id.* at 11. The FBI argues that its decisions during the initial search do not demonstrate "bad faith." ECF No. 72 at 7. That may be true, but those decisions also do not demonstrate reasonableness. Essentially, although the FBI prevailed on some issues raised during summary judgment, many of its actions during the initial search were unreasonable. Therefore, even though the fourth factor is a slightly closer call than the first, second, and third factors, the Court finds that the fourth factor weighs in favor of Mattachine's entitlement to costs and fees. Even if the fourth factor did not weigh in Mattachine's favor, the Court would still find that the other three factors are sufficient to entitle Mattachine to fees.

### III. The Costs and Fees that Mattachine Requests are Reasonable.

Mattachine has met its burden to show that its costs and fees were reasonable and has satisfied its "heavy obligation to present well-documented" evidence of its work on this case. *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1324 (D.C. Cir. 1982). The time logs that McDermott Will & Emery LLP ("McDermott") submitted are sufficiently detailed. The Court commends Mattachine for voluntarily removing hours worked by "non-core" associates and partners as well as by all summer associates. Mattachine has also elected not to seek the $6,387.50 for all work completed following the Court's July 2017 Order. Plaintiff's efforts to be reasonable in its request have not gone unnoticed. Additionally, it is worth mentioning that even though McDermott performed its work for Mattachine *pro bono*, that is not a bar to recovering attorneys' fees, as courts frequently award costs and fees in *pro bono* cases. *See, e.g., Williams v. FBI*, 17 F. Supp. 2d 6, 9 (D.D.C. 1997) (awarding fees in a *pro bono* case in order to encourage *pro bono* service).

### A. McDermott's Hourly Rates and Allocation of Work were Reasonable.

The hourly rates that McDermott charged were reasonable. As Mattachine correctly points out, "there is no better indication of what the market will bear than what the lawyer in fact charges for his [or her] services" and what the clients are willing to pay. *Cobell v. Jewell*, 234 F. Supp. 3d 126, 167 (D.D.C. 2017). Mattachine is basing its request for fees on McDermott's 2016 billing rates, which were in line with the prevailing rates charged by other large law firms in 2016. For the four partners who worked on the case, McDermott billed an average of $768.75 per hour. For the four associates who worked on the case, McDermott billed an average of $468.25 per hour. According to the *National Law Journal's* 2016 Annual Billing Survey, McDermott's rates were on par with many other comparable firms' rates.

There is also no issue with the number of hours worked on this case or the way that work was distributed among the attorneys. The FBI objects to the number of attorneys who worked on the matter; however, Mattachine is only seeking to charge defendant for the hours worked by eight of those attorneys. Having four partners and four associates dedicate a total of 343.75 hours was reasonable in light of the work that this matter required. The FBI contends that the two attorneys with primary responsibility for the case—Michael Huttenlocher and Irene Firippis—should have done more of the work, and therefore the other six attorneys' rates should be discounted. This argument, however, overlooks the fact that the work performed was all important to the case. Therefore, if the other six attorneys were not doing that work, Mr. Huttenlocher and Ms. Firippis would have had to complete those tasks. It seems unlikely that the government would have preferred to pay Mr. Huttenlocher's rate of $695 per hour instead of Anisa Mohanty's rate of $515 per hour.

### B. The *Laffey* Matrix is the Appropriate Calculation for Attorneys' Fees in this Case.

Mattachine proposes three different options for calculating fees. The Lodestar Method simply "multipl[ies] the hours reasonably expended in the litigation by a reasonable hourly fee." *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 66 F. Supp. 3d 134, 148 (D.D.C. 2014). As set forth in the chart in Mattachine's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Attorneys' Fees and Costs, attorneys' fees under the Lodestar Method would be $193,772.50. ECF No. 60-1 at 13. Alternatively, Mattachine proposes using the LSI-*Laffey* Matrix ("*Laffey* Matrix"), which bases an attorney's hourly rate on his or her years of experience. According to the chart in Mattachine's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Attorneys' Fees and Costs, attorneys' fees under the *Laffey* Matrix would be $178,134. *Id.* at 15. Finally, Mattachine proposes using the rates listed in the United States Attorneys' Office Fees Matrix ("USAO Matrix"). According to the chart in Mattachine's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Attorneys' Fees and Costs, attorneys' fees under the USAO Matrix would be $138,800. *Id.* Unsurprisingly, the FBI argues that the USAO Matrix provides the best measure of reasonable fees.

After considering all three options, the Court has decided that the *Laffey* Matrix is applicable here. This choice is largely based upon a D.C. Circuit decision from May of 2019 which rejected the USAO Matrix for its failure to "survey[] the relevant population" and "canvass[] the relevant type of lawyer" before imposing a specific hourly rate. *DL v. District of Columbia*, 924 F.3d 585, 592 (D.C. Cir. 2019). USAO's fatal flaw is that it "incorporates rates from *all* types of lawyers" and thus often produces too low of a fee award, particularly in complex litigation cases. *Id.* Although FOIA litigation is probably not as complex as the

Individuals with Disabilities Education Act litigation at issue in *DL*, it is still more intricate and nuanced than the preparation of "simple wills," which the D.C. Circuit criticized the USAO Matrix for including in its calculations. *Id.* Therefore, in the wake of *DL*, the Court cannot apply the USAO Matrix as the FBI requests.

Although Mattachine explains how the Lodestar Method would result in $193,772.50 in fees, Mattachine never actually asks for that amount. The highest amount Mattachine requests is $178,134 under the *Laffey* Matrix. The Court will not award Mattachine more than it asked for and finds that the *Laffey* Matrix appropriately values McDermott's services. The Court also sees no reason to decrease the award by 50% as the FBI requests. Therefore, the Court will award Mattachine $178,134 in attorneys' fees. Mattachine also seeks administrative costs in the amount of $314.91. Defendant agrees that these costs are reasonable and does not object to paying them, so the Court will award an additional $314.91 in costs. In total, defendant will be ordered to pay $178,448.91.

## CONCLUSION

Based on the foregoing, the Court will **GRANT** Plaintiff's Motion for Attorneys' Fees and Costs.

It will be **ORDERED** that defendant United States Department of Justice shall pay plaintiff The Mattachine Society of Washington, DC $178,134 in attorneys' fees and $314.91 in costs for a total of $178,448.91.

A separate Order accompanies this Memorandum Opinion.

Date: 4/27/19

Royce C. Lamberth
United States District Court Judge

9